UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TERRY W.[1],                        )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       No. 1:21-cv-02098-SEB-DML
                                    )
KILOLO KIJAKAZI,[2]                 )
                                    )
                Defendant.          )

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §

636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition.  As addressed below, the Magistrate Judge recommends

that the District Judge AFFIRM the decision of the Commissioner of the Social

Security Administration that Terry is not disabled.

## Introduction

Terry applied in August of 2019 for Disability Insurance Benefits (DIB)

under Title II of the Social Security Act.  (R. 20).  After his claim was denied

---

[1]     To protect the privacy interests of claimants for Social Security benefits, the
Southern District of Indiana has chosen to use only the first name and last initial of
non-governmental parties in its Social Security review opinions.  The Plaintiff will
therefore be referred to by his first name.

[2]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,
2021.  She is substituted for Andrew Saul as the defendant under Fed. R. Civ. P.
25(d) and the last sentence of 42 U.S.C. § 405(g) (action seeking judicial review of
final decision of the Commissioner of Social Security "shall survive notwithstanding
change in the person occupying the office of Commissioner of Social Security or any
vacancy in such office").

initially and on reconsideration, a hearing was held on February 1, 2021, before administrative law judge Donald D'Amato. (R. 18). The ALJ issued his decision on February 10, 2021, that Terry was not disabled. (R. 28). The Appeals Council denied review on May 26, 2021, rendering the ALJ's decision for the Commissioner final. (R. 1). Terry timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Terry contends that the Commissioner's decision must be reversed because (1) the ALJ's application of SSR 16-3p in assessing his symptoms was erroneous and (2) the ALJ failed to provide a function-by-function assessment of the RFC by failing to account for Terry's need to soak and elevate his leg, by failing to provide sufficient evidentiary support for the sit-stand option, and by ignoring evidence of headaches in the medical record. (Plaintiff's Brief, Dkt. 10, pp. 12, 17, 18, 21, 24).

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Terry's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Terry is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age,

2

education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has predetermined are disabling, so that if a claimant meets all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity ("RFC") is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform his past relevant work, then he

is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart*, 362 F.3d 1026, 1029 (7th Cir. 2001).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari*, 270 F.3d 1171,1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Before addressing Terry's specific assertions of error, the court provides background information about his past work activity and his medical impairments and then summarizes the ALJ's sequential findings.

## Analysis

### I.     Background

Terry was born in 1983 and was 35 years old on the date his application was filed. (R. 27). He has no relevant work experience. *Id.* In 2013, Terry suffered a nonunion fracture of the medial malleolus in his right ankle. (R. 271). Terry was initially placed in a cast but had continued pain, so he underwent surgery on August 15, 2013. *Id.* In 2016, Terry's foot was injured when a car ran through the wall of a gas station, knocking a shelf over onto him; he went to the emergency room for right foot and ankle pain and edema. (R. 266). The treating physician noted that Terry had mild swelling around the ankle joint and that Terry had "had prior internal fixation of a fracture of the medial malleolus with 3 screws," but that "[t]he fracture has healed." *Id.*

On September 19, 2018, Terry went to an outpatient clinic for right ankle and knee pain that he had been experiencing after falling two weeks before. (R. 265). However, Terry also complained that he had had pain in his ankle since his surgery in 2013 and that he always has trouble walking on his right leg. *Id.* Terry rated the pain in his right ankle and knee an eight out of ten, and he also complained of

headaches. *Id.* On examination, Terry exhibited mild tenderness around his right ankle and anterior right knee; he was assessed with a right ankle sprain. *Id.* X-rays revealed no fractures or dislocation in the ankle, no loosening of the hardware from the 2013 surgery, and no fractures or dislocation of the right knee. *Id.* Terry did, however, have soft tissue swelling in his right ankle and a small effusion in his right knee. (R. 215). The treating nurse practitioner noted that Terry had right knee pain, likely due to a medial collateral ligament strain, but also noted that he had full range of motion, could continue to bear weight as tolerated, and was "ambulatory with no assistive devices." (R. 291).

On July 2, 2019, Terry saw nurse practitioner Lucas Teel to discuss pain medications for his right ankle injury. (R. 336). Terry explained to Teel that he was going to be returning to work, so he wanted "to get this in check." *Id.* Teel noted that Terry had an ankle fracture in 2013 with hardware placed via surgery and that Terry "has had pain ever since." *Id.* Terry complained that he was having daily pain and that since he would have to stand at work, he wanted to try other medications that might give him some relief. *Id.* He reported that Terry had no joint swelling but was tender to palpation throughout the joint and had intact range of motion. *Id.* Teel "advised of RICE for ankle pain," noted that Terry "may benefit from ortho management of injury," and prescribed diclofenac (R. 337).

In a function report from September 4, 2019, Terry stated that, when he wakes in the morning, he takes "a bath with [the] assistance of a foot stool because" he is unable to stand. (R. 173). He also stated that he must sit when getting

dressed, that he cannot cook because he cannot tolerate the pain while trying to stand and cook, and that he needs "help getting up from chairs." (R. 174, 176). While sitting still, Terry explained that his foot twitches because of nerve damage. (R. 177). He shops only on the computer, and he stated that he uses a cane prescribed by a doctor. (R. 180).

On November 8, 2019, Terry was seen by consultative examiner Dr. Ami Rice. (R. 341). Terry reported right ankle pain from a fall that required surgery. *Id.* He also reported that he had been using a cane "all the time" since 2017 and that he uses an orthotic boot when his ankle "gets to hurting real bad"—which occurs about twice per week. *Id.* He told Dr. Rice that he stopped driving in 2016 because of leg pain and that he has intermittent spasm pain in his right leg. *Id.* Often, this spasm pain would occur when Terry was in bed and would wake him up. *Id.* Terry reported that his ankle is swollen when he gets up in the morning. *Id.* He uses compression stockings, but mostly in the winter, and he reported trying Percocet in the past with good relief but stated that he did not like how the medication made him feel. *Id.* It was also noted that Terry was diagnosed with hypertension in 2011 and that he has pain behind his eyes two to three days per week, but Aleve gives him some relief. (R. 341). Upon physical examination, Terry had normal gait, could stand on toes and heels, could squat down to the floor, and could tandem walk for six steps without support. (R. 342). But his right ankle pain was worse with toe walking. (R. 343). Moreover, Terry had no inflammation or effusion of any joint and was able to get on and off the examination table without

assistance.  *Id.*  Dr. Rice noted that "[c]linical evidence does not support the need for an ambulatory aid," that Terry had full range of motion in the lower extremities, and that he could bear weight equally but might benefit from weight loss and "additional conservative management options."  (R. 342, 343).  Dr. Rice opined that Terry "is able to perform normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet, able to grasp objects and able to get on/off table without assistance."  (R. 343).

A few weeks later, on November 26, 2019, Terry returned to nurse practitioner Teel because he needed a letter for child support attesting to his "disability."  (R. 348).  Again, Teel noted Terry's 2013 fracture and that "[h]e has continued to have some pain in the ankle over the years."  *Id.*  Further, Teel reported that Terry had failed to follow the previous plan of care: Terry "has not taken NSAIDS, performed recommended therapy or follow-up with orthopedics as of yet."  (R. 348, 349).  And he noted that Terry, who was working as a chef at the time, "stands on his feet all day," still reports daily pain in his ankle, and complained of swelling at the appointment.  (R. 348).  On examination, Teel noted no headaches and no joint swelling, no deformities, and intact range of motion.  *Id.*  Teel continued to prescribe diclofenac and recommended that Terry follow the previous plan prescribed at his first visit.  (R. 349).

At his hearing before the ALJ, Terry testified about his ankle fracture and surgery from 2013, stating that the hardware in his ankle is permanent.  (R. 39).  He testified that his leg bothers him the most of all his impairments.  (R. 40).  Terry

told the ALJ that he cannot stand on his leg for too long—specifically, that he can barely stand on it for an hour—and that it frequently swells. *Id.* In fact, his leg can swell so much that he is forced to remove his shoe and take a seat. (R. 40-41). But he also has problems while sitting; Terry testified that sometimes after sitting for about half an hour, his leg will lock up, requiring him to move it around a bit. (R. 41). On a typical day, Terry will get up and soak his foot in the tub first thing in the morning for 15 to 30 minutes—depending on whether it is swollen that day. (R. 42-43). He also testified that he soaks his foot two or three times throughout the day. (R. 44). A year or two before his hearing, Terry lost his balance and fell in the shower, so he only takes tub baths now, and he said he uses a cane to walk, which he testified was prescribed by a doctor after his ankle surgery. *Id.* The cane helps Terry balance and take the weight off his leg, so he said he tries to use it as much as possible. (R. 45). With respect to household chores, Terry stated that he is not able to go grocery shopping because he will be in "excruciating" pain if he is on his leg for too long. *Id.* While he tries to avoid using stairs, Terry said that he can walk for 20 to 30 minutes at a time before the swelling and pain in his foot becomes too much to tolerate. (R. 46).

## II.   The ALJ's Sequential Findings

At step one, the ALJ found that Terry had not engaged in substantial gainful activity since August 21, 2019, the application date. (R. 20). At step two, he determined that Terry's severe impairments were history of right ankle fracture (status post reconstructive surgery with hardware), history of left wrist fracture

(status post-surgery with three pins), asthma, hypertension, and obesity. *Id.* The ALJ decided at step three that no listings were met or medically equaled. (R. 21).

For the RFC, the ALJ decided that Terry was capable of light work "except that he requires an unskilled entry level job involving simple routine tasks that can be learned on the job within 30 days or less." (R. 22). The RFC also included the following:

> [Terry] can stand and/or walk (with normal breaks) for four hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to sit for two minutes before resuming standing and/or walking while remaining on task; can sit (with normal breaks) for six hours in an eight-hour workday, but can do so for only 30 minutes at one time before needing to stand and/or walk for two minutes before resuming sitting while remaining on task.

(R. 22). Furthermore, the RFC provides that Terry can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl. *Id.* The ALJ found at step four that Terry has no past relevant work. (R. 27). At step five, he determined that, based on the testimony of a vocational expert, Terry's vocational factors, and his RFC, Terry could perform the following jobs that existed in significant numbers in the national economy: packer, porter, and assembler. *Id.* Accordingly, the ALJ determined that Terry was not disabled since August 21, 2019, the date Terry's application was filed. (R. 28).

### III.    **Terry's Assertions of Error**

Terry makes two assertions of error. First, Terry claims that the ALJ's application of SSR 16-3p in assessing Terry's symptoms was erroneous because he merely summarized the medical record and provided minimal and erroneous

reasoning to discredit Terry's statements. (R. 12). Second, Terry claims that the ALJ did not provide a function-by-function assessment of the RFC because he failed to account for Terry's need to soak and elevate his leg, failed to provide sufficient evidentiary support for the sit-stand option, and ignored evidence of headaches in the medical record.

A reviewing court must determine if it can follow the ALJ's reasoning and if substantial evidence supports his decision. *Dixon*, 270 F.3d at 1176. It must afford an ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). If the ALJ failed to build a bridge between the evidence and his conclusion, then this court must reverse. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). The court addresses each of Terry's contentions in turn.[3]

### A. The ALJ's assessment of Terry's symptoms was not erroneous.

Terry first claims that the ALJ erred in assessing his subjective symptoms under SSR 16-3p. (Plaintiff's Brief at 12). An ALJ is required to evaluate a claimant's subjective symptoms and their effects on his functioning in light of the relevant objective medical evidence, the consistency (or inconsistency) across time of

---

[3]      Page 27 of Terry's brief references bilateral hand use. However, Terry never asserts any limitations with the use of his hands in his brief, so it is not clear to the court why this comment was included here. Therefore, the court will not address this matter. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("'[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.")

the claimant's descriptions about his symptoms and their effects, the activities the claimant has engaged in and whether and how he may have structured his activities to minimize his symptoms to a tolerable level, and any other information such as medications, precipitating and aggravating factors, and treatment that may shed light on the persuasiveness of the information the claimant provides. SSR 16-3p.

An ALJ's evaluation is entitled to special deference from the court unless it is "patently wrong." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). A court may find it patently wrong if the ALJ's determination is not "competently" explained or is grounded in reasons that are not supported by the record, *id.*, or are otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). Further, when an ALJ's evaluation is particularly error-infected, remand is required because the court cannot determine whether the ALJ would otherwise have come to the same conclusion about the claimant's functional capacity and ability to work. *Id.* (A credibility determination is a judgment call and when the ALJ "based his judgment call on a variety of considerations but three of them were mistaken," the court cannot be sure that the same determination would be made had he not erred).

Here, the ALJ's evaluation of Terry's subjective symptoms was not patently wrong. The ALJ noted in the decision that Terry's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Terry's] statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 23). This statement, Terry argues, is prohibited boilerplate that "ALJs are not permitted to make without some analysis of the evidence [that] allows the court to trace the path of reasoning" or that allows for meaningful judicial review. (Plaintiff's Brief at 14). He further argues that the ALJ made no attempt to comply with SSR 16-3p; the ALJ merely recited the medical record and then provided only a very brief statement that Terry "had very little follow-up treatment." *Id.* The court is not persuaded by Terry's arguments.

To begin with, the ALJ's statement that Terry's subjective symptoms "are not entirely consistent with the medical evidence" does warrant remand by itself. The ALJ's use of boilerplate language "does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony." *Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018). The ALJ did not rely solely on boilerplate phrases and mere summary in the decision; he provided specific reasons in making his determination:

> [Terry] reports that he uses a cane all the time to walk, which was prescribed by his doctor in 2013 for walking and balancing. However, the medical record does not indicate any prescription for cane or any significant issues with balance. [Terry's] exams consistently reveal full strength and note that he was walking without an assistive device. Only one note in September 2018 mentions that [Terry] had an antalgic gait.

(R. 22). And the ALJ highlighted how the medical record was lacking in specific evidence to support Terry's descriptions of his symptoms:

> [Terry] has a right ankle fracture and left wrist fracture from 2013 and 2003, respectively with very little follow-up treatment. He claims to have right leg swelling requiring elevation and the use of a cane, as well as left wrist issues,

but there is limited longitudinal medical evidence to support such significant findings. Exams do not regularly indicate swelling, nor do they indicate that [Terry] was using a cane to ambulate or that he required one. X-rays after his surgeries are essentially normal and other imaging has also been normal. He reported to the consultative examiner that he had undergone physical therapy, but there are no such records in evidence.

(R. 26-27). Even a cursory review of the record evidence indicates that the ALJ's analysis here was justified. After going to the emergency room when a gas station shelf fell on his foot, the physician noted only mild swelling in Terry's ankle and noted that his prior fracture had healed. (R. 266). On another occasion, Terry went to the doctor for ankle plain, but he was assessed only with mild tenderness and some soft tissue swelling, and x-rays revealed no fractures, no dislocation, and no loosening of the hardware from his 2013 surgery. (R. 265). The medical evidence also indicates that Terry's range of motion is normal, that he can bear weight, and that he does not need a cane to walk. (R. 291). Multiple medical exams have revealed no swelling or inflammation of Terry's ankle. (R. 336, 343, 348). And walking tests have shown that Terry has normal gait and can walk and squat. (R. 342). When prescribed a plan of care to help alleviate his alleged pain, the evidence indicates that Terry never followed through with the plan. (R. 348, 249). Therefore, it was well within the ALJ's authority to weigh this evidence and conclude that it was not entirely consistent with Terry's statements.

The ALJ also did not err by failing to consider a single comment from Terry that he could not afford to follow up with an orthopedic doctor for his ankle. (Plaintiff's Brief at 14). Terry suggests that he made this comment to a physician after having surgery on his ankle and that the reason there is very little follow-up

treatment in the medical record is because he could not afford additional treatment. However, this comment was made on June 7, 2013—*before* he had surgery.  (R. 272).  The record indicates that he did indeed follow up with an orthopedic doctor when he underwent surgery on August 15, 2013—approximately two months later. (R. 271).  Therefore, Terry cannot rely on this one-time statement since the record shows that he *did* seek follow-up treatment after making it.  And Terry's claim that the medical record is lacking because he could not afford treatment is further undermined by the fact that he also failed to follow through with general treatment recommendations, such as nurse practitioner Teel's recommendation that he utilize RICE—rest, ice, compression, and elevation—and take NSAIDs.  (R. 337, 348). Terry never provided any other justification for the lack of follow-up treatment in the record.  Accordingly, the ALJ did not err in assessing Terry's subjective symptoms under SSR 16-3p.

### B. The evidence does not support Terry's claim that he needs to elevate and soak his leg.

Next, Terry claims that the ALJ did not account for his need to elevate and soak his leg in a bathtub multiple times per day.  (Plaintiff's brief at 18).  While an ALJ need not address every piece of evidence in his decision, he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions.  *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Here, the decision *does* mention Terry's statements that he needs to elevate and soak his leg. (R. 23) ("On a typical day, he sits in the tub for up to 30 minutes and soaks his foot … He soaks two to three times per day in hot water for around 30 minutes each time.")  Therefore, the ALJ did not wholly ignore this evidence. Instead, the decision makes clear that the ALJ rejected Terry's claim of frequent ankle swelling, noting that there is limited medical evidence in the record to support such a claim.  (R. 26-27).  A major problem with Terry's argument here is that he has provided no opinion from any doctor or medical provider indicating that he requires greater limitations than what the ALJ found.  *See Gedatus*, 994 F.3d at 904; *see Dudley v. Berryhill*, 773 F. App'x. 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error.")  He cites to one note from nurse practitioner Teel that Terry was "advised of RICE for ankle pain." (R. 337).  However, Teel merely advised Terry of this treatment.  Teel did not instruct Terry to utilize RICE, did not indicate that it was medically necessary, and certainly did not opine that soaking was necessary several times per day.  Additionally, it is not clear that Terry could not utilize a less drastic option to reduce his alleged swelling, such as an icepack.  And notably, at Terry's appointment with Teel a few months later, Teel reported that Terry "did not follow previous plan of care."  (R. 349).  The ALJ was not "playing doctor" as Terry suggests; finding that there is no evidence to support Terry's alleged need to soak his foot is fundamentally different from the ALJ substituting his opinion for a medical expert's.  Therefore, Terry's claim that the ALJ erred is not persuasive.

**C. The sit-stand option in the RFC is supported by the evidence.**

Terry also claims that the ALJ's RFC and step five determinations are flawed because the sit-stand option is not supported by sufficient evidentiary support. (Plaintiff's Brief at 21). The ALJ prescribed the following sit-stand option:

> [Terry] can stand and/or walk (with normal breaks) for four hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to sit for two minutes before resuming standing and/or walking while remaining on task; can sit (with normal breaks) for six hours in an eight-hour workday, but can do so for only 30 minutes at one time before needing to stand and/or walk for two minutes before resuming sitting while remaining on task.

(R. 22). Terry contends that the ALJ erred here because he did not consider several comments Terry made to medical providers and to the ALJ during his hearing, including that he needs help getting up from chairs, can only stand for about an hour at a time before his foot gets swollen, often has to remove his shoe and sit down because of swelling, experiences locking up in his leg when sitting for about 30 minutes, tries to stay away from stairs, and can walk for 20 to 30 minutes before his leg starts to hurt and swell. *Id.* at 21-22. The court does not agree that the ALJ erred here.

Terry does not cite any record evidence supporting the assertion that he needs help getting up from chairs. Rather, what the record shows is that Terry was able to get on and off an examination table without assistance. (R. 343). Terry also said that he avoids stairs, but again, he does not support this statement with any record evidence suggesting that this is a medically required limitation. The RFC only requires him to occasionally climb stairs—and only when the stairs have

17

handrails. (R. 22). The rest of Terry's remarks are consistent with the RFC—in fact, the RFC goes beyond Terry's asserted limitations in several respects. Terry claims that he can only stand for one hour at a time before the swelling becomes too severe; the RFC only requires him to stand for 15 minutes at one time. *Id.* Terry claims that his leg will start to lock up sometimes after sitting for about half an hour; the RFC only requires him to sit for 30 minutes before being able to stand and/or walk. *Id.* Terry claims that he can only walk for 20 to 30 minutes; again, the RFC only requires him to stand and/or walk for 15 minutes at a time. *Id.* The court does not see how the RFC fails to account for Terry's alleged needs—especially when the RFC adopts even more restrictive limitations.

Terry also claims that there is no logical bridge between the evidence and the on-task requirement in RFC. (Plaintiff's Brief at 22). The RFC states that Terry can change between sitting and standing/walking at the prescribed intervals "while remaining on task." (R. 22). And at the hearing, the ALJ's hypotheticals asked the VE to assume that Terry could perform the prescribed sit-stand option "while remaining on task." (R. 48). Further, the VE testified that, in addition to scheduled breaks, an individual could be off task up to 15% of the day but that anything beyond that would be work preclusive. *Id.* Therefore, the court understands the RFC to mean that the sit-stand option does not allow for Terry to be off-task; nevertheless, the jobs provided by the VE would allow Terry to be off task for up to 15% of the workday—not including regularly scheduled breaks. Terry has not presented any evidence to support a finding that he would need to be off task for a

greater amount of time—or at all.  In fact, Terry's counsel never raised any issues at the hearing about the sit-stand option or Terry's ability to remain on task, and counsel never argued that Terry would need to be off task for more than 15% of the day.  (R. 51).

Instead, Terry now argues that the ALJ did not sufficiently articulate the on-task requirement.  Again, the RFC provides that Terry can stand and/or walk "for only 15 minutes at one time before needing to sit *for two minutes* before resuming standing and/or walking." (R. 22) (emphasis added).  And Terry can sit "for only 30 minutes at one time before needing to stand and/or walk *for two minutes* before resuming sitting." *Id.* (emphasis added).  Terry takes issue with the sit-stand option because the ALJ failed explain his reasoning for certain aspects of the sit-stand option—such as why a two-minute break was required, as opposed to a different time interval.  (Plaintiff's Brief at 22).  Therefore, he claims that the ALJ failed to build a logical bridge that the court can trace.  But this court's focus is whether it can follow the ALJ's reasoning and whether substantial evidence supports the decision.  *Dixon*, 270 F.3d at 1176.  The Seventh Circuit recently clarified this standard in *Brumbaugh v. Saul*: "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial evidence standard." *Brumbaugh v. Saul*, 850 F.App'x 973, 977 (7th Cir. 2021).  Therefore, Terry's argument that the ALJ failed to build a logical bridge between the evidence and the on-task requirement is misguided; if the sit-stand option is supported by substantial evidence, there is no error.

Here, the sit-stand option is supported by substantial evidence because it is consistent with Terry's own testimony about his abilities. Therefore, the court can follow the ALJ's reasoning. In fact, the ALJ imposed even more restrictive limitations than consultative examiner Dr. Rice's findings, which tend to show that Terry does not require *any* limitations with sitting, standing, or walking; Terry never presented any opinion evidence to refute Dr. Rice. (R. 343). Thus, the ALJ's crafting of a sit-stand option that is almost identical to Terry's testimony, coupled with the fact that there is no opinion evidence in the record suggesting that Terry requires a more restrictive sit-stand option, satisfies the substantial evidence standard.[4]

### D. Terry's claim that he suffers from headaches is not supported by objective medical evidence.

Last, Terry claims that the ALJ did not consider evidence in the record that he suffers from headaches. SSR §416.921 provides the following:

> [A claimant's] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.

---

[4]    The court acknowledges Terry's reliance on cases in which the court reversed the ALJ for failing to articulate his reasoning for certain aspects of the sit-stand option (i.e., for failing to explain why a one-to-two-minute break, as opposed to a longer break, was appropriate). In the court's view, these cases impose an articulation requirement that the substantial evidence standard does not require. *See Brumbaugh*, 850 F.App'x at 977. Therefore, the court does not find these cases persuasive.

It also provides that a claimant's statement of symptoms does not establish the existence of an impairment.  Here, Terry relies on three documents in the record to support his claim that he suffered from headaches.  The first document merely provides that "[Terry] does complain of headaches."  *Id.*  The second document indicates that Terry reported having "pain behind eyes 2-3 days/week; taking Aleve with some relief."  (R. 341).  And the third document indicates that Terry had a CT scan of his head that found "[n]o evidence of acute intracranial abnormalities."  (R. 281).  Thus, Terry's claim that he suffers from headaches is not supported by the record; the court cannot consider these documents as anything more than evidence of subjective complaints of headaches, which SSR §416.921 states is not enough to establish the existence of an impairment.

What is more, the record evidence shows that Terry was assessed with no headaches on November 16, 2019.  (R. 348).  This assessment was made approximately one week after it was noted that Terry had pain behind his eyes, a little over one year after it was noted that Terry complained of headaches, and over seven years after his CT scan.  Therefore, in addition to the fact that there is very little record evidence even mentioning headaches, the documents cited by Terry are contradicted by more recent evidence suggesting that he does not suffer from headaches.  Also, Terry never mentioned headaches at his hearing before the ALJ, and when asked by his attorney if there was anything else he wanted to tell the ALJ, Terry responded "[n]o, not really."  (R. 46-47).  Therefore, the ALJ did not err by failing to account for headaches in the RFC.

## <u>Conclusion</u>

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Terry was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: 7/14/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email